JOSE R. GARAY, ESQ. (SBN 200494)
JOSE GARAY, APLC
25255 Cabot Road, Ste. 219
Laguna Hills, CA 92653
Telephone: (949) 208-3400
Facsimile: (949) 713-0432
jgaray@garaylaw.com

Attorneys for Plaintiffs Darren Shane Panter, Joseph Todd Terras, Bobby Tyler, on behalf of themselves and all others similarly situated.

**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

DARREN SHANE PANTER, JOSEPH TODD TERRAS, and BOBBY TYLER, as individual California residents, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

TRINITY RIVER LUMBER COMPANY, a California corporation;

Defendant.

Case No.: 2:14-CV-02277-MCE-CMK

**CLASS ACTION**

**MEMORANDUM OF POINTS AND AUTHORITIES ISO PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES, COSTS AND ENHANCEMENT AWARD**

Date of Hearing: May 18, 2017
Time of Hearing: 2:00 p.m.
Courtroom 7, 14th Floor
Hon. Morrison C. England

Complaint Filed: September 30, 2014

First Amended Complaint Filed: February 11, 2015

Second Amended Complaint Filed: May 28, 2015

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1

II. SUMMARY OF SETTLEMENT TERMS ........ 1

III. ARGUMENT ........ 2

A. THE SETTLEMENT MERITS FINAL APPROVAL ........ 2

1. The Strength of Plaintiff's Case ........ 3

2. The Risk, Expense, Complexity and Likely Duration of Further Litigation ........ 4

3. The Risk of Maintaining Class Action Status ........ 4

4. The Amount Offered in Settlement ........ 5

5. The Extent of Discovery Completed and the Stage of the Proceedings ........ 5

6. The Experience and Views of Counsel ........ 6

7. The Reaction of Class Members to the Settlement ........ 6

B. THE AMOUNT OF FEES REQUESTED BY PLAINTIFF IS REASONABLE ........ 6

1. Plaintiff's Fee Request Is Reasonable Under a Percentage Of The Fund Approach ........ 7

a. The Common Fund Doctrine ........ 10

b. Evolution of the Percentage Method ........ 12

c. Awards in Similar Cases ........ 13

2. Plaintiff's Fee Request Is Reasonable Based Under a Lodestar Approach ........ 15

C. THE AMOUNT OF COSTS REQUESTED BY PLAINTIFF IS REASONABLE. 15

D. THE INCENTIVE AWARD REQUESTED BY PLAINTIFF IS REASONABLE 16

E. SETTLEMENT ADMINISTRATOR COSTS ........ 17

IV. CONCLUSION ........ 18

**TABLE OF AUTHORITIES**

CASES

*Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984) .......... 1, 9, 13

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .......... 7, 10, 13

*Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D.Ohio 2001) .......... 17

*Class Plaintiffs v. Seattle* (9th Cir. 1992) 955 F.2d 1268 .......... 3

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) .......... 17

*Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 254-59 (1985) .......... 1

*Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113 (C.D. Ca. 2008) .......... 14, 15

*Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper* 445 U.S. 326, rehg. denied, (1980) .. 7, 10

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991). 17

*Florin v. Nations Bank of Georgia*, 34 F.3d 560, 564 (9th Cir. 1994) .......... 11

*Glass v. UBS Fin. Servs*., 15 Wage & Hour Cas. 2d (BNA) 1330, 2007 U.S. Dist. LEXIS 8476, (N.D. Cal. 2007) .......... 10, 17

*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011 .......... 3, 7

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) .......... 9

*In re Activision Securities Litigation*, 723 F.Supp. 1373, 1375 (N.D. Cal. 1989) .......... 12

*In re Beverly Hills Fire Litigation* (E.D. Ky. 1986) 639 F.Supp. 915.......... 15

*In re Cedant Corp., Derivative Action Litigation* (D. N.J. 2002) 232 F.Supp.2d 327 .......... 5

*In re Charter Communications, Inc. Securities Litigation* (E.D. Mo. 2005) 2005WL4045741. 15

*In re Copley Pharmaceutical, Inc.* 1 F.Supp.2d 1407, 1411 (D. Wyo.1998).......... 7

*In re Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) ...... 17

*In re Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F.Supp.2d 1166, 1174 ......... 5

*In re Lifelock, Inc. Marketing and Sales Practices Lit.* (D. Ariz. 2010) 2010 WL 3715138........ 6

*In re Merry-Go-Round Enterprises, Inc.* (Bankry D. Md. 2000) 244 B.R. 327 .......... 15

*In re Pacific Enterprises Security Litigation* (9th Cir. 1995) 47 F.3d 373, 379.......... 7

*In re Rite Aid Corp. Sec. Litigation* (E.D. Pa. 2001) 146 F.Supp.2d 706 .......... 15

*In re Warner Communications Sec. Lit.*, 618 F.Supp. 735, 749-50 (S.D. N.Y. 1985) .......... 13, 14

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975) ................................................ 12

*Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. 2009).................... 10

*Lealao v. Beneficial California, Inc.* 82 Cal.App.4th 19, 49-50 (2000) ..................................... 7

*Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San. Corp.* 540 F.2d 102 (3rd Cir.1976) 12

*Linney v. Cellular Alaska Partnership* (N.D. Cal 1997) 1997 WL 450064, at *5........................ 5

*Nat'l Rural Telecommons. Coop v. DirectTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523................... 4

*Paul, Johnson, Alston & Hunt v. Gaulty* 886 F.2d 268 (9th Cir. 1989) ............................ 7, 10-11

*Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ............................................................ 9

*Reynolds v. National Football League* (8th Cir. 1978) 584 F.3d 280 .......................................... 6

*Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948 ........................................... 16

*Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 (E.D. Ca. Nov. 14, 2007) ........................................................................................ 14

*Scura et al. v. Shurgard Storage Ctr., Inc.* (U.S.D.C. N. Dist. Cal. Case No. C 02 5246 CRB). 14

*Singer v. Becton Dickinson and Co.*, 2010 U.S. Dist. 2010 WL 2196104, * 8 (S.D. Ca. June 1, 2010)........................................................................................... 14

*Six Mexican Workers v. Arizona Citrus Growers* 904 F.2d 1301 (9th Cir. 1990)................. 7, 10

*Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 968 ............................................................ 7

*Steiner v. American Broadcasting Co.* (9th Cir. 2007) 248 Fed.Appx. 780................................ 15

*Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.* (E.D. Pa. 2005) 2005WL123926 15

*Trustees v. Greenough*, 105 U.S. 527 (1881)............................................................................ 12

*Van Bronkhorst v. Safeco Corp.* (9th Cir. 1976) 529 F. 2d 943, 950............................................ 2

*Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299-300 (N.D. Cal. 1995)................. 17

*Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482 ............................... 3, 14

*Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047 .......................................... 7, 13

*West v. Circle K. Stores, Inc.* (E.D. Cal. 2006) 2006 U.S. Dist. LEXIS 767558 .......................... 6

*Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir. 1997) .................................. 13

*Wren v. RGIS Inventory Specialists* (N.D. Cal. 2011) 2011 WL 1230826................................. 16

**I**

**INTRODUCTION**

On February 16, 2017, the Court granted preliminary approval of the class action settlement (the "Settlement") reached between Plaintiffs Darren Shane Panter, Joseph Todd Terras, and Bobby Tyler ("Plaintiffs") and Defendants Trinity River Lumber Company ("Trinity") (the "Defendant"). Pursuant to the Settlement, Defendant is required to pay a total of $275,000.00 on a non-reversionary basis in exchange for a release of class member claims. (*see* Declaration of Jose R. Garay (hereinafter the "Garay Decl."), ¶6).

On March 10, 2017, the Court appointed Settlement Administrator mailed to 348 class members the Class Notice approved by the Court. (*see* Declaration of Melissa Meade on behalf of Phoenix Settlement Administrators (hereinafter the "Meade Decl.") ¶7). To date, only two class members have "opted-out" from the Settlement, and **zero** class members have "objected" to the Settlement. (Meade Decl. ¶¶10, 11). The average settlement amount for each class members is approximately $1,726.80 and the highest individual settlement payment is estimated to be $4,134.71. (Meade Decl. ¶16).

Plaintiffs now moves under Rules 23(e) and (h) of the Federal Rules of Civil Procedure for final approval of the Settlement and for an award of fees, costs, and an enhancement payment. As set forth below, the Settlement is fair, adequate and reasonable, and the amounts of fees, costs, and enhancement payment requested by Plaintiffs are reasonable. Plaintiffs respectfully requests that the Court grant final approval to the Settlement and award Plaintiffs the full amount of fees, costs, and enhancement payment as requested and as "preliminarily approved" by the Court's February 16, 2017 Order.

**II**

**SUMMARY OF SETTLEMENT TERMS**

The material terms of the Settlement are as follows:

- The Settlement Class is comprised of the following:

  - All of hourly non-exempt former and current employees at Trinity in California employed from September 30, 2010 until February 16, 2017.
- Defendants will pay a non-reversionary Maximum Settlement Amount of Seven Hundred and Ninety-Five Thousand Dollars ($275,000.00) in exchange for a release of class member claims.
- After settlement administration expenses, attorney's costs and fees, an enhancement award are deducted from the Maximum Settlement Amount, the entirety of the remaining funds (the "Net Settlement Amount") shall automatically be distributed to class members by multiplying the Net Settlement Amount by a fraction, the numerator of which is the individual class member's total number of eligible workweeks, and the denominator of which is the total of all eligible workweeks for all members of the Settlement Class during the Settlement Class Period.
- Defendants will not oppose an application by Plaintiffs for an award of costs of up to $7,000 or an award of attorneys' fees of up to $91,670.00 (33.3% of the Maximum Settlement Amount); and
- Defendants will not oppose an application by Plaintiffs Darren Shane Panter, Joseph Todd Terras, and Bobby Tyler for incentives award of up to Twelve Thousand dollars ($12,000.00) to each representative.
- Defendants do not oppose an amount equal to Five Thousand dollars ($5,000.00) to reimburse plaintiff Joseph Todd Terras for missing tools.

(Garay Decl. ¶7).

**III**

**ARGUMENT**

**A. THE SETTLEMENT MERITS FINAL APPROVAL:**

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, costs, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.* (9th Cir. 1976) 529 F. 2d 943, 950.

Rule 23(e)(2) of the Federal Rules of Civil Procedure provides that a court may approve a settlement of a class action when it finds that the settlement is "fair, reasonable, and adequate." The following factors are relevant to this determination: **1)** the strength of the Plaintiffs's case; **2)** the risk, expense, complexity, and likely duration of further litigation; **3)** the risk of maintaining class action status throughout the trial; **4)** the consideration offered in settlement; **5)** the extent of discovery completed, and the stage of the proceedings; **6)** the experience and views of counsel; and **7)** the reaction of the class to the proposed settlement. *Molski v. Gleich* (9th Cir. 2003) 318 F. 3d 937, 953; *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026.. In this case, each of these factors weighs in favor of granting final approval to the Settlement.

**1. The Strength of Plaintiffs' Case**

Assessing the strength of a Plaintiffs' case involves weighing the merits against the settlement amount and potential recovery. *Van Bronkhorst*, 529 F.2d at 950. *See also*, *Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, 488. A district court need not, however, "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in the litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. Seattle* (9th Cir. 1992) 955 F.2d 1268, 1291. Here, the outcome of this case was extremely uncertain. Defendants denied Plaintiffs' claims and, in the absence of settlement, would have vigorously contested a motion for class certification.

Defendant maintained that the class members were exempt and not entitled to overtime pay, regular rate pay, or entitled to reimbursement for tools. Defendants also maintained written policies related to meal breaks and rest periods. (*Id*.). There were also inherent problems with proof of damages, as Defendants argued that any non-compliance related to meal breaks and rest periods was based solely on an isolated incident attributable to a management level employee not following corporate policies and procedures and was not a systemic issue occurring at all retail store locations in

California. (*Id*.). Thus, in the absence of settlement, there were possible litigation outcomes where class members would have recovered absolutely nothing. (*Id*.).

Plaintiffs clearly faced high litigation risks and the prospect of years before obtaining, if ever, a final judgment in favor of the class. The difficulty of predicting whether Plaintiffs or Defendants would ultimately have prevailed in this case strongly supports approval of the Settlement.

**2. The Risk, Expense, Complexity and Likely Duration of Further Litigation**

Continued litigation of this case would have exposed Plaintiffs to substantial expense and risk. In the absence of settlement, Plaintiffs ran the risk that a contested motion for class certification would have been denied. Moreover, even if class certification had been granted as Plaintiffs thought likely, Plaintiffs still ran the risk of subsequent decertification. Plaintiffs also faced substantial risk, and the prospect of lengthy and expensive discovery, with respect to the merits of Plaintiffs' claims, especially in light of the fact that there are over 2,000 class members. Among other issues, continued litigation would likely have involved expensive and lengthy disputes regarding Plaintiffs' discovery of class member contact information, personnel records, time-punch records, and/or other employment records. The prospect of "lengthy and expensive litigation with uncertain results" clearly supports settlement. *See, Nat'l Rural Telecommons. Coop v. DirectTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 526.

**3. The Risk of Maintaining Class Action Status**

While Defendants have not objected to class certification for the purposes of settlement, Plaintiffs faced the substantial risk of an adverse result on their contested motion for class certification, which would have resulted in class members getting absolutely nothing. When it comes to class certification, district courts have wide discretion and it remained to be seen how the Court would have ruled on Plaintiffs' forthcoming class certification motion within the next few months in the absence of a settlement.

**4. The Amount Offered in Settlement**

The Settlement reflects recovery by Plaintiffs equal to approximately 42% of the estimated value of their claims for their labor claims. (Garay Decl. ¶18). The settlement value achieved by Plaintiffs on their principal claims easily satisfies the requirements for a "fair" compromise well within the range of reasonableness. Plaintiffs clearly achieved a fair settlement well within the range of reasonable outcomes that merits final approval. *See, In re Cedant Corp., Derivative Action Litigation* (D. N.J. 2002) 232 F. Supp.2d 327 (approving settlement which provided 2% value compared to maximum possible recovery).

**5. The Extent of Discovery Completed and the Stage of the Proceedings**

Approval of a class action settlement does not require that discovery be exhaustive or that the parties engage in formal discovery procedures. *See, e.g. In re Immune Response Securities Litigation* (S.D. Cal. 2007) 497 F.Supp.2d 1166, 1174 (settlement approved where informal discovery gave the parties "a clear view of the strength and weaknesses of their cases"). The fact that settlement results from arms length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership* (N.D. Cal. 1997) 1997 WL 450064 at *5.

Here, a substantial amount of informal discovery was conducted prior to the parties attending mediation. (Garay Decl. ¶¶7-11). Defendants time-punch data that was analyzed by Plaintiffs' expert, wage statement data, an electronic spreadsheet listing each putative class member's dates of employment, and multiple written employee handbooks and policies. (*Id*.) Both sides prepared detailed damage models and mediation briefs. (*Id*.) This data and analysis formed much of the basis for the settlement negotiations. (*Id*.)

Having only reached a settlement after a full day of mediation with David L. Perrault, Esq., in Sacramento, California, there is no dispute that the parties' settlement negotiations were all conducted at arm's length. (Garay Decl. ¶6). In this case, the parties held clear (and strongly opposing) views of the strengths and weaknesses of their

cases and, with the assistance of the mediator, ultimately reached a fair settlement that required each side to compromise. (*Id*.)

**6. The Experience and Views of Counsel**

The opinions of experienced class counsel are entitled to "considerable weight." *West v. Circle K. Stores, Inc.* (E.D. Cal. 2006) 2006 U.S. Dist. LEXIS 767558, *17-18. *See also, Vasquez,* 266 F.R.D. at 489 (courts should give great weight to counsel's recommendations). Plaintiffs' counsel has substantial experience litigating class actions in general and wage and hour class actions in particular. (Garay Decl. ¶ 3). The opinion of Plaintiffs' counsel that the Settlement is fair and reasonable, and that final approval of the Settlement would best serve the interests of class members because the extremely favorable result achieved by the Settlement outweighs the risks and uncertainty of continued litigation, weighs strongly in favor of final approval.

**7. The Reaction of Class Members to the Settlement**

To date, only two class members have requested to "opt-out" from the Settlement and **zero** class member have "objected" to the Settlement. (Meade Decl. ¶¶9, 11). These facts demonstrate an overwhelmingly positive response to the Settlement that strongly supports final approval. *See, e.g., Reynolds v. National Football League* (8th Cir. 1978) 584 F.3d 280 (16 objectors out of 5,400 class members provided strong evidence of no significant dissatisfaction with settlement); *In re Lifelock, Inc. Marketing and Sales Practices Litigation* (D. Ariz. 2010) 2010 WL 3715138, *6 (relatively few objections and requests for exclusion support approval).

**B. THE AMOUNT OF FEES REQUESTED BY PLAINTIFFS IS REASONABLE:**

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure, a court may award "reasonable attorneys' fees" that are "authorized by law or by the parties' agreement." Here, Defendants have agreed not to oppose a request by Plaintiffs for fees up to the amount of $91,670.00, which is 33.3% of the Maximum Settlement Amount of $275,000.00. (Garay Decl. ¶21). Plaintiffs' request for fees in the amount of $91,670.00

is authorized by the Settlement (*Id*.), and whether fees are determined by the percentage of the fund approach or the lodestar approach, the amount of fees requested by Plaintiffs is reasonable.

**1. Plaintiffs' Fee Request Is Reasonable Under A Percentage Of The Fund Approach.**

The requested fee falls well within the lower range of the Ninth Circuit's benchmark of 25% to 40% of a common fund and is fair compensation for undertaking such complex, risky and time-consuming litigation on a contingent basis. See *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnston, Alston & Hunt v. Graulty* (9th Cir. 1989) 886 F.2d 268, 272; *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1029; *In re Pacific Enterprises Security Litigation* (9th Cir. 1995) 47 F.3d 373, 379; *Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047; *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 968. Here, the common fund (the full amount of the non-reversionary gross settlement amount payable under the Settlement) is $795,000 and Plaintiffs requests fees equal to *33.3%* of the common fund.

In defining a reasonable fee, the Court should mimic the marketplace for cases involving a significant contingent risk such as this one. Given the unique reliance of our legal system on private litigants to enforce substantive provisions of law in class actions, attorneys providing these substantial benefits should be paid an award equal to the amount negotiated in private bargaining that takes place in the legal market place. *Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338, rehg. denied, 446 U.S. 947 (1980). "When a fee is set by a court rather than by contract, the object is to set it at a level that will approximate what the market would set. . . . The judge, in other words, is trying to mimic the market in legal services." *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998); *Lealao v. Beneficial California, Inc.* 82 Cal.App.4th 19, 49-50 (2000) ("attempting to award the fee that informed private bargaining, if it were truly possible, might have reached." A fee award should approximate a "percentage fee [] freely negotiated in comparable litigation."); *In re Copley Pharmaceutical, Inc.*, 1

F.Supp.2d 1407, 1411 (D. Wyo.1998) ("the percentage of the fund method better approximates the workings of the marketplace by focusing on the results achieved.").

At the time that this case was brought, the result was far from certain. (Garay Decl. ¶¶12, 21). Here, a number of defenses asserted by Defendants presented serious threats to the claims of Plaintiffs and Class Members. (*Id*.). Defendants likely would contend that Defendants' employment practices complied with all applicable labor laws. For example, Defendants contended that Class Members were provided pay for all hours worked and received meal breaks and rest periods as mandated under the labor code and the company maintained written policies in this regard. (Garay Decl. ¶12). There were also inherent problems with proof of damages, as Defendants argued that any discrepancies with meal break and rest period compliance was an isolated incident attributable to a management level employee not following corporate policies and procedures. (*Id*.). If successful, Defendants' defenses could eliminate or substantially reduce any recovery to the Class. (*Id*.). While Plaintiffs believes that these defenses could be overcome, Defendants maintained these defenses have merit and therefore present a serious risk to recovery by the Class. (*Id*.). If successful, Defendants' defenses could eliminate or substantially reduce any recovery to the Class. (*Id*.).

At the time of the mediation, the parties were aware that if a resolution could not be reached, preparations for class certification would need to resume immediately and a motion for class certification would need to have been filed shortly thereafter, in light of this Court's prior Order setting dates for a class certification hearing. (Garay Decl. ¶15).

The Settlement was possible only because Class Counsel had been able to convince Defendants that Class Counsel could potentially prevail on the legal issues regarding the failure of Defendants to provide compliant meal breaks and rest periods, which Plaintiffs maintains would lead towards achieving class certification for all class members, and overcoming difficulties in proof as to monetary relief. (Garay Decl. ¶16).

In successfully navigating these hurdles so as to convince Defendants to settle, Class Counsel displayed skills consistent with those that might be expected of attorneys

of comparable experience. Class Counsel's skill in presenting this case to overcome the difficulties is also compelling given the exceptional and well recognized quality of Defendants' Counsel from the prestigious, capable, and well-staffed law firm of *Hirschfeld Kraemer LLP.* To represent the Class on a contingent fee basis, Class Counsel had to forego compensable hourly work and other contingent cases to devote the necessary time and resources to this contingent case. In so doing, Class Counsel gave up the hourly work that a firm can bank on for the risky contingent fee work in this case which could have paid Class Counsel nothing. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).

The United States Supreme Court has ruled that the parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees. See *Evans v. Jeff D.*, 475 U.S. 717, 734-35, 738, n.30 (1980). In *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), the Supreme Court held that negotiated, agreed-upon attorneys' fee provisions are the ideal towards which the parties should strive:

> A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee.

*Id*., at 437.

The United States Supreme Court has reemphasized this policy and further stressed that the trial court "has a responsibility to encourage agreement" on fees. *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984). Here, as part of the Settlement, Defendants agreed to an award of 33.3% of the Settlement Payment for attorneys' fees. Such a fee award is commensurate with what the market would provide for similar services and the Court therefore can most certainly enforce the agreement. As the United States Supreme Court has instructed:

> Given the unique reliance of our legal system on private litigants to enforce substantive provisions of law through class and derivative actions, **attorneys providing the essential enforcement services must be provided incentives roughly comparable to those negotiated in the**

> **private bargaining that takes place in the legal marketplace**, as it will otherwise be economic for defendants to increase injurious behavior.

*Deposit Guaranty Nat. Bank, supra,* 445 U.S. at 338.[1]

Here, informed arms-length bargaining between experienced counsel for the Class and Defendants was clearly adversarial and arm's-length before an experienced and well regarded class action mediator. (Garay Decl. ¶6). Such bargaining is the best measure of the market for fees. The requested fee and cost award were a product of arm's-length negotiations, and the negotiated amount is justified by Class Counsel's incurred fees, and therefore fairly reflects the marketplace value of the services rendered by Class Counsel in this case. (Garay Decl. ¶18). As a result, the fee agreed to by the parties should be approved.

**a. The Common Fund Doctrine:**

The Common Fund Doctrine is predicated on the principle of preventing unjust enrichment. It provides that when a litigant's efforts create or preserve a fund from which others derive benefits, the litigant may require the passive beneficiaries to compensate those who created the fund.[2] Federal courts have embraced this doctrine. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Six Mexican Workers*, supra, 904 F.2d at 1311; *Vincent, supra*, 557 F.2d at 769; *Paul, Johnson, Alston & Hunt, supra*, 886 F.2d at 271; *Glass v. UBS Fin. Servs*., 15 Wage & Hour Cas. 2d (BNA) 1330, 2007 U.S. Dist. LEXIS 8476, *49 (N.D. Cal. 2007); *Knight v. Red Door Salons, Inc.*, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. 2009) (awarding 30% of $500,000 common fund).

In the present case, it is clear that a common fund has been created and that the requisites supporting payment of fees by the beneficiaries of that fund are satisfied. Under the foregoing doctrine, courts have historically and consistently recognized that class litigation is increasingly necessary to protect the rights of individuals whose

---

[1] Emphasis added and internal citations omitted unless otherwise noted.

[2] A task force commissioned by the Third Circuit recommended that compensation for creating common funds be calculated by a percentage of the funds created. See *Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 254-59 (1985); see also *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984).

injuries and/or damages are too small to economically justify individual representation. *In Paul, Johnson, Alston & Hunt*, *supra*, 886 F.2d at 271, the Ninth Circuit embraced this principle when it stated:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116 (1885), it is well settled that the lawyer who creates a common fund is allowed an extra reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. **The amount of such a reward is that which is deemed 'reasonable' under the circumstances**.

*Id*. (emphasis added).

Accordingly, in determining a reasonable common fund fee award, courts should properly consider the fact that fees serve as an economic incentive for lawyers to bring class action litigation in order to achieve increased access to the judicial system for meritorious claims and to enhance deterrents to wrongdoing. See, *A. Conte, Attorney Fee Awards*, 2nd. Ed., § 104, at 6§§. Without prosecution on a contingent basis and use of the class action mechanism the courthouse door would effectively be closed to all class members due to the relatively small amount of their individual claims in relation to the enormous time and cost associated with class action litigation. When the Ninth Circuit held that the Common Fund Doctrine was available in ERISA cases, the court affirmed this principle:

> Having determined that risk multipliers remain available in common fund cases after *Dague*, we further note that we have held, in a pre-*Dague* case, that a risk multiplier is not merely available in a common fund case but mandated, if the court finds that counsel 'had no sure source of compensation for their services . . . Moreover, we have observed that the need for such an adjustment is particularly acute in class action suits. **The lawyers for the class receive no fee if the suit fails, so their entitlement to fees is inescapably contingent**.'

*Florin v. Nations Bank of Georgia*, 34 F.3d 560, 564 (9th Cir. 1994) (emphasis added).

When this case was originally filed it was "inescapably contingent." (Garay Decl. ¶21). Further, the result was by no means guaranteed. (*Id*.) Effective prosecution of this case was founded upon the risky contingent investment of time and expense. (*Id*.)

///

///

**b. Evolution of the Percentage Method:**

Ever since the Common Fund Doctrine found its genesis in *Trustees v. Greenough*, 105 U.S. 527 (1881), courts have awarded fees on a percentage basis. In arriving at a reasonable percentage fee award, courts considered a variety of factors but focused on the particular circumstances of the case in fixing a percentage based upon a "benchmark." During the late 1960's and early 1970's following the 1966 amendments to Rule 23, the size of settlement funds began increasing significantly and the fees awarded pursuant to the percentage method, usually taken out of context, were criticized by commentators and the general press. Then, in 1973, that year's revision for the Manual for Complex Litigation proposed that all common fund fee awards be based on "time reasonably expended on the action." This concept was then embraced in *Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San. Corp.* 487 F.2d 161 (3rd Cir. 1973) and *Lindy Bros. Bldrs., Inc. of Phila. v. American R. & R. San. Corp.* 540 F.2d 102 (3rd Cir. 1976). Thereafter, many courts adopted *Lindy's* rationale, and courts generally began awarding fees based on the actual time expended (the loadstar) in conjunction with a multiplier of between 2 and 4. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975).

As time passed, however, and courts were forced to wade through voluminous and often indecipherable time records, it became evident that utilization of the loadstar method had reached a point of diminishing returns. Further, this approach created a disincentive for cases to settle early. As the court observed in *In re Activision Securities Litigation*, 723 F.Supp. 1373, 1375 (N.D. Cal. 1989):

> **The question this court is compelled to ask is, 'Is this process necessary?' Under a cost-benefit analysis, the answer would be a resounding, 'No!'** Not only do the *Lindy Kerr* and *Johnson* analyses consume an undue amount of court time with little resulting advantage to anyone, but, in fact, it may be to the detriment of the class members. They are forced to wait until the court has done a thorough, conscientious analysis of the attorneys' fee petition. Or, class members may suffer a further diminution of their fund when a special master is retained and paid from the fund. Most important, however, is the effect the process has on the litigation and the timing of settlement. Where attorneys must depend on a loadstar approach, there is little incentive to arrive at an early settlement.

(emphasis added).

In *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir. 1997), the Ninth Circuit confirmed that the percentage method governs attorney fee awards in common fund cases. *Williams* held that the percentage award should be calculated based on the total value of the common fund not just the amount claimed by class members because, under *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), "attorneys for a successful class may recover a fee based on the entire common fund created for the class…" 129 F.3d at 1027.

Since *Blum v. Stenson*, 465 U.S. 886 (1984), where the Supreme Court approved a "percentage of fund" as being an appropriate fee award, courts have increasingly rejected the loadstar approach. This trend recognizes the fact that compensating class counsel in class litigation on a percentage basis (common fund) makes good sense because **(1)** it is consistent with the private marketplace where contingent fee attorneys are customarily compensated on such a basis; **(2)** it aligns the interests of class counsel and absent class members in achieving the maximum possible resolution of the case; and, **(3)** it augers for the most efficient and expeditious resolution of the litigation by providing an incentive for early, yet reasonable, settlement.

**c. Awards in Similar Cases:**

The attorneys' fees requested by Class Counsel are within the range of fees awarded in comparable cases. A review of class action settlements over the past 10 years shows that the courts have historically awarded fees in the range of 20% to 50%, depending upon the circumstances of the case. *In re Warner Communications Sec. Lit.*, 618 F.Supp. 735, 749-50 (S.D. N.Y. 1985). Class Counsels' requested fees are 33.3% of the total value of the case, a percentage well within the range of reasonableness given the excellent results obtained for the Class, the risks undertaken, and the skill of the prosecution. See *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-49 (9th Cir. 2002)

(approving 28% attorneys fee award as reflecting "the standard contingency fee for similar cases").

In *In re Warner Communications Sec. Lit.*, Judge Keenan concluded that percentage fees in common fund cases range from 20% to 50%. *Id*., 618 F.Supp. at 749-50. Professor Newberg is in accord:

> No general rule can be articulated on what is a reasonable percentage of a common fund. Usually 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented.

Newberg, *Newberg on Class Actions*, 3rd Ed., § 14.03, at 14-13§§.

Indeed, where the common fund is under $10 million, California Courts tend to award attorneys' fees greater than 25%. See *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Ca. 2008) (holding attorneys' fees for large fund cases are typically under 25% and cases below $10 million are often more than 25%). More particularly, a review of California cases in other districts reveals that courts usually award attorneys' fees in the 30%-40% range in wage and hour class actions that result in recovery of a common fun under $10 million. See *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Ca. 2010) (citing to five recent wage and hour class actions where federal district courts approved attorney fee awards ranging from 30% to 33%).

In similar federal actions involving overtime class actions, fee requests of 30% or more are routinely awarded. On June 1, 2010, Chief Judge Irma Gonzalez, awarded a fee award equal to 33.33% of the common fund, holding that award was similar to awards in three other wage and hour class action cases where fees ranged from 30.3% to 40%. *Singer v. Becton Dickinson and Co.*, 2010 U.S. Dist. LEXIS 53416, 2010 WL 2196104, * 8 (S.D. Ca. June 1, 2010). On October 7, 2005, in *Scura et al. v. Shurgard Storage Centers, Inc.* (U.S.D.C. Northern Dist. Cal. Case No. C 02 5246 CRB), the Hon. Charles R. Breyer awarded a 33% fee request in an overtime class action. In *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270, 2007 WL 3492841 (E.D.

Ca. Nov. 14, 2007), the Court awarded a 33.3% attorneys' fee award in a wage and hour class action.

**2. Plaintiffs' Fee Request Is Reasonable Based Under A Lodestar Approach.**

A lodestar analysis in this case also supports the conclusion that the amount of fees requested by Plaintiffs is reasonable. As set forth in the Declarations of Plaintiffs' counsel, the lodestar calculation reflects that Plaintiffs's request for fees results in a lodestar multiplier of ***0.94*** (Garay Decl. ¶21). A lodestar multiplier of ***0.94*** falls well within the range of reasonableness and is substantially less than much higher lodestar multipliers commonly awarded in class actions. *See, e.g., Craft v. County of San Bernardino* (C.D. Cal. 2008) 628 F.Supp.2d 1113, 1125 (multiplier of **5.2**); *In re Merry-Go-Round Enterprises, Inc.* (Bankry D. Md. 2000) 244 B.R. 327 (multiplier of **19.6**); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.* (E.D. Pa. 2005) 2005 WL 123926 (multiplier of **15.6**); *In re Rite Aid Corp. Sec. Litigation* (E.D. Pa. 2001) 146 F.Supp.2d 706 (multiplier of **4.5 – 8.5**); *In re Cendent Corp. PRIDES Litigation* (3d Cir. 2001) 243 F.3d 722, 732 (multiplier of **7**); *In re Rite Aid Corp. Sec. Litigation* (E.D. Pa. 2005) 362 F.Supp.2d 587 (multiplier of **6.96**); *In re Charter Communications, Inc. Securities Litigation* (E.D. Mo. 2005) 2005 WL 4045741 (multiplier of **5.61**); *In re Beverly Hills Fire Litigation* (E.D. Ky. 1986) 639 F.Supp. 915 (multiplier of **5**); *Steiner v. American Broadcasting Co.* (9th Cir. 2007) 248 Fed.Appx. 780, 783 (multiplier of **6.85**).

As a result, the reasonableness of the requested fee award is confirmed by comparison to class counsel's actual loadstar in this case.

**C. <u>THE AMOUNT OF COSTS REQUESTED BY PLAINTIFFS IS REASONABLE</u>:**

As part of the Settlement, the parties agreed that Class Counsel shall be entitled to reimbursement of costs not to exceed $7,000.00. (Garay Decl. ¶8). Class Counsel requests reimbursement for costs in the amount of **$7,000.00**, which is substantially less than actual costs incurred in this litigation. (*Id*.)

These costs primarily involve the following: filing of a Complex Complaint in the United States District Court, Eastern District of California; legal courier fees for service on the Defendant, and courtesy copy deliveries of the Preliminary Approval and Final Approval Motion papers to Chamber's; fees associated with retaining an e-data analysis expert for raw data analysis for mediation preparation; travel related fees associated with attending the (i) Initial Status Conference, (ii) Mediation on March 16, 2016 in Sacramento, (iii) travel for Preliminary Approval Hearing, and (iv) Final Approval Hearing on May 18, 2017 . The actual total costs for Jose Garay, APLC *exceed* is **$7,000.00** (Garay Decl. ¶8). Costs for electronic legal research, regular postage, and copies/faxes are not billed.

These costs were reasonably incurred in the prosecution of this matter. (Garay Decl. ¶8). The declarations from Plaintiffs' counsel substantiate that these costs were incurred, and there is no basis for disputing their reasonableness, nor are they contested.

**D. THE SERVICE ENHANCEMENT REQUESTED BY PLAINTIFFS IS REASONABLE:**

As part of the Settlement, the parties agreed that Plaintiffs shall be entitled to request a Service Enhancement of up to $12,000.00 each. (Garay Decl. ¶8). Plaintiffs have requested an enhancement payment in the amount of $12,000 each. (*Id.*) This request comports with ample precedent. "It is well established in this circuit that named Plaintiffs in a class action are eligible for reasonable incentive payments, also known as service payments." *Wren v. RGIS Inventory Specialists* (N.D. Cal. 2011) 2011 WL 1230826, at *31. As the Ninth Circuit has observed, incentive payments to named Plaintiffs are now "fairly typical." *Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 958.

Plaintiffs should be awarded a reasonable enhancement in this case because they not only achieved an excellent result on behalf of 384 class members, but also subjected themselves to the possibility of having to pay the employer costs or attorneys' fees, and the threat of blacklisting (especially in this age of "*googling*" prospective employee

names) for suing an employer in future employment endeavors. (Garay Decl. ¶¶17, 26). Moreover, over the last 24 months, Plaintiffs have communicated with counsel on countless occasions, provided all documents and other information requested by their counsel, assisted counsel with advising on informal discovery requests for purposes of mediation preparation, provided names and phone numbers of co-workers that Plaintiffs's counsel utilized in evaluating the claims alleged, and made themselves available during mediation. (*Id*.).

The payment of an incentive award to a successful class representative is appropriate and the requested amount is below amounts awarded in other class action cases. See e.g. *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299-300 (N.D. Cal. 1995)(incentive award of $50,000); *In re Dunn & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366 (S.D. Ohio 1990) (two incentive awards of $55,000, and three incentive awards of $35,000); *Brotherton v. Cleveland*, 141 F.Supp.2d 907, 913-14 (S.D.Ohio 2001)(granting a $50,000 service award); *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991) ($50,000 awarded to each class representative). *Glass v. UBS Fin. Servs.*, 2007 U.S. Dist. LEXIS 8476 at *51-*52 (N.D.Cal. 2007)(awarding $100,000 divided among four Plaintiffs in overtime wages class action); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)(affirming $25,000 service award to class representative in ERISA case).

Defendant does not oppose the requested enhancement award, which is reasonable based on the size of the settlement and compares favorably with enhancement awards in similar wage and hour class action settlements. (Garay Decl. ¶26). In light of all the relevant considerations, Plaintiffs' request for an enhancement award is reasonable and Plaintiffs respectfully request that it be granted in full.

**E. <u>SETTLEMENT ADMINISTRATOR COSTS</u>:**

As part of the Settlement, the parties agreed that the claims administration costs "are estimated not to exceed $11,000.00." (Garay Decl. ¶8). Pursuant to the Declaration from the Phoenix Settlement Administrators (*i.e.* the "Meade Decl."), the total costs

associated with the claims administration process is **$11,000.00**. (Meade Decl. ¶17; Garay Decl. ¶8). Class Counsel respectfully requests approval of these costs to Phoenix Settlement Administrators.

**IV**

**CONCLUSION**

The Settlement is fair, reasonable and adequate in all respects. Plaintiffs respectfully requests the Court to grant Plaintiffs' Motion for Final Approval of the Class Action Settlement and award the full amount of requested settlement administration costs, class representative service enhancement, and attorneys' fees and costs.

Dated: May 1, 2017 JOSE GARAY, APLC

By: ***s/Jose Garay***
JOSE R. GARAY, ESQ
Attorneys for Plaintiffs